AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Carol Reanes-Moreno (a.k.a. Carol Reanos-Moreno, a.k.a. Carol Betzada Reanos-Moreno, a.k.a. Fany Moreno) | ) ) ) ) ) |
| *Defendant(s)* | ) |

Case No. 3:23-mj-71146 MAG

FILED

Jul 31 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___June 27, 2023___ in the county of ___San Francisco___ in the
___Northern___ District of ___California___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C) | Possession with Intent to Distribute a Mixture or Substance Containing a Detectable Amount of Fentanyl |

This criminal complaint is based on these facts:

Please see attached affidavit of DEA Special Agend Edmund Ian Sharp

☑ Continued on the attached sheet.

/s/ Edmund Ian Sharp
*Complainant's signature*

Approved as to form
/s/ *Christoffer Lee*, AUSA

Edmund Ian Sharp, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___Telephone___ *(specify reliable electronic means)*.

Date: ___07/28/2023___

*Judge's signature*

City and state: ___San Francisco, CA___   Hon. Alex G. Tse, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN
## ARREST WARRANT AND CRIMINAL COMPLAINT

I, Edmund Ian Sharp, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, hereby declare as follows:

## INTRODUCTION

1.      I make this affidavit in support of an application for an arrest warrant and criminal complaint charging Carol Reanes-Moreno (a.k.a. Carol Reanos-Moreno, a.k.a. Carol Betzada Reanos-Moreno, a.k.a. Fany Moreno) ("**Reanes-Moreno**") with 21 U.S.C. §§ 841(a)(1), (b)(1)(C), based on her possession with intent to distribute a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide (fentanyl), occurring on or about June 27, 2023, in San Francisco, California, in the Northern District of California.

## SOURCES OF INFORMATION

2.      The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses.  Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part.  Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3.      Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included each and every fact known to me about this case.  Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant.  My

1

understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4.      I am a Special Agent of the Drug Enforcement Administration ("DEA") and have held this position since September 2019.  I am currently assigned to the DEA Resident Office in San Francisco, California.  I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7).  I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including drug offenses.

5.      In January 2020, I completed the DEA's 18-week specialized law enforcement training course at the DEA's Training Academy in Quantico, Virginia.  The training covered all aspects of drug investigations, including the identification of controlled substances, physical and electronic surveillance, utilization of confidential sources, interview techniques, undercover operations, financial investigations, money laundering techniques, and the general operation of drug trafficking organizations.

6.      Prior to my employment with the DEA, I was on active duty with the United States Coast Guard for approximately four years.  For more than two of those years, I was a member of my unit's law enforcement team and directly participated in more than a dozen narcotics interdiction operations.  These operations primarily involved intercepting drug-smuggling boats in the Eastern Pacific Ocean.  These interdictions frequently involved the seizure of hundreds of kilograms of controlled substances.  Over the course of my deployments, I was involved in the seizure of several metric tons of controlled substances.  In that assignment, I became familiar with various practices of drug traffickers, such as the methods used for packaging, hiding, transporting, and smuggling narcotics.

7.      During the course of my law enforcement career, I have participated in numerous drug trafficking investigations.  I have participated in multiple interviews with persons involved

2

in drug trafficking.  In addition, I have spoken with more experienced law enforcement officers concerning the methods and practices used by drug traffickers.  I have participated in many aspects of drug investigations including, but not limited to, controlled purchases of narcotics, physical and electronic surveillance, and the execution of search warrants.  I have previously served as the affiant for both federal arrest and search warrants.

8.     I have been involved in the execution of approximately a dozen state and federal narcotics-related search warrants.  As a result, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles used by traffickers and trafficking organizations in their efforts to import, conceal, manufacture, and distribute controlled substances.  I am familiar with the appearance of marijuana, heroin, cocaine, methamphetamine, fentanyl, and other controlled substances.  I am familiar with and aware of terminology used by illegal drug traffickers concerning narcotics and narcotics dealing.

9.     Based on my training and experience, as well as conversations I have had with drug dealers, informants, and experienced law enforcement officers, I have become familiar with the practices of narcotics traffickers.  Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking.  These methods include the use of automobiles, wireless communications devices (such as cellular phones), lookouts and counter surveillance, false or fictitious identities, coded language, and/or encrypted communications.  I know that many drug traffickers use cell phones to facilitate their drug dealing activities, including to arrange the collection, transportation, and distribution of narcotics.  I also know that many drug traffickers will meet in person at pre-arranged locations to conduct meetings and transactions in furtherance of their drug trafficking activities.  Many drug dealers utilize such practices to commit crimes while avoiding detection by law enforcement.

10.     I have also had discussions with other law enforcement officers and confidential informants about the packaging and preparation of narcotics, the methods of operation, and

3

security measures that are often employed by narcotics traffickers.  I have examined documentation of various methods in which fentanyl and methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed.

11.     I have personally participated in the investigation discussed in this affidavit.  I am familiar with the facts and circumstances of the investigation through my personal participation in it based on several investigative techniques, including discussions with agents of the DEA and with other law enforcement agencies, and review of records and reports relating to the investigation.  Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued.  Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

12.     **Possession of Controlled Substance with Intent to Distribute a Controlled Substance.**  Under Title 21, United States Code, Section 841(a)(1), (b)(1)(C) it is unlawful for any person to knowingly possess with intent to distribute a federally controlled substance.  Under 21 C.F.R. § 1308.12, fentanyl is a Schedule II controlled substance.

## STATEMENT OF PROBABLE CAUSE

13.     On June 27, 2023, **Reanes-Moreno** was arrested by DEA agents/San Francisco Police Department (SFPD) officers near Larkin Street and Golden Gate Avenue, in San Francisco, California, in the Northern District of California.  Based on the facts described below, I have probable cause to believe that **Reanes-Moreno** violated 21 U.S.C. §§ 841(a)(1), (b)(1)(C), based on her possession with intent to distribute a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide (fentanyl) on that date.

14.     On or about June 27, 2023, DEA agents and SFPD officers (SFPD) conducted a

narcotics spotting operation in San Francisco, in the area of Golden Gate Avenue and Larkin Street. Based on my training and experience, I know this corner and surrounding area to be an area known for high volumes of hand-to-hand fentanyl distribution. I personally participated in this operation and describe it below.

15.    On or about 4:30 p.m. on this date, from a position of concealment, agents observed a then-unknown female (later identified as **Reanes-Moreno**) interacting with subjects and later observed a hand-to-hand transaction of suspected narcotics on the corner of Larkin Street and Golden Gate Avenue. Shortly before approximately 5:15 p.m., agents observed a male approach and hand money to **Reanes-Moreno**, who in turn handed the male a clear bag containing a white substance. **Reanes-Moreno** was wearing a black hooded sweatshirt and black pants. After this suspected narcotics transaction, **Reanes-Moreno** took out other suspected narcotics in clear plastic bags and placed them back in her sweatshirt. In close proximity to **Reanes-Moreno,** agents observed a male wearing a backpack, who, based on my training and experience, appeared to be receiving guidance and/or instructions from **Reanes-Moreno** regarding where to walk and stand, which was consistent with this individual being used as a "holder" of controlled substances. A holder is an individual who holds controlled substances for a dealer so that the dealer may evade law enforcement detection by not directly possessing the controlled substances. Law enforcement believed they had witnessed a hand-to-hand sale of suspected narcotics by **Reanes-Moreno** and believed that **Reanes-Moreno** also possessed additional suspected narcotics for distribution that agents observed her place back in her sweatshirt. Shortly thereafter, at approximately 5:15 p.m., the other agents and law enforcement personnel located nearby moved in and contacted **Reanes-Moreno** and the bagholder. Still photographs excerpted from the surveillance video recording depicting **Reanes-Moreno**'s possession of fentanyl, distribution of fentanyl, and possession of cash following the transaction, as well as proximity to the bagholder, appear below:

5





16.     Law enforcement then detained **Reanes-Moreno** and the bagholder.  A

subsequent search of **Reanes-Moreno**'s sweatshirt revealed a bag containing suspected fentanyl

(98.4 grams gross weight, later tested presumptive positive for fentanyl) and a digital scale.  In

**Reanes-Moreno**'s pants pockets, law enforcement recovered a large amount of US currency and

numerous baggies consistent with packaging and preparing controlled substances for individual sales.

17.     A subsequent search of the bagholder's person revealed suspected fentanyl in two bags on his person (68.5 grams gross weight, later tested presumptive positive for fentanyl) and other controlled substances located in a green bag, black backpack, and black Steve Madden female-style bag, all possessed by the bagholder.  Most notably, law enforcement recovered 724.5 grams gross weight of suspected fentanyl in thirteen separate bags from the black Steve Madden female-style bag and 265.1 grams gross weight of suspected fentanyl in seven separate bags from the green bag; some of this fentanyl was later field tested and returned a presumptive positive result for fentanyl using a TruNarc analyzer.

18.     I later retrieved video footage from the vicinity of Golden Gate Avenue and Larkin Street for June 27, 2023, from approximately 4:30 p.m. to 5:30 p.m.  I reviewed this footage.  The footage reveals the bagholder on scene as of approximately 4:30 p.m., holding the same black backpack he was wearing when police arrested him on June 27, 2023.  The footage also shows **Reanes-Moreno** on scene as of approximately 4:30 p.m.  She does not appear to be holding a bag.  At or around 4:32 p.m., the bagholder walks west towards 378 Golden Gate Avenue, at which point he cannot be seen due to a tree blocking the camera's sight line.  At or around 4:38 p.m., **Reanes-Moreno** also walks west towards 378 Golden Gate Avenue, at which point she also cannot be seen.  Later, at or around 4:41 p.m., **Reanes-Moreno** walks east to 366 Golden Gate Avenue, holding a bag containing a white substance.  At or around 5:13 p.m., the bagholder walks west on Golden Gate Avenue and then north on Larkin Street.  **Reanes-Moreno** is seen following roughly ten to fifteen feet behind the bagholder.  The surveillance footage helps to further establish concerted action between **Reanes-Moreno** and the bagholder in furtherance of **Reanes-Moreno**'s violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) on June 27, 2023.

_July 19, 2023 Spotting Operation and On-Viewed Narcotics Sales_

19.     On July 19, 2023, law enforcement, from a position of concealment, conducted

surveillance on the vicinity of Golden Gate Avenue and Larkin Street and observed **Reanes-Moreno** conduct what law enforcement recognized, based on training and experience, to be numerous suspected hand-to-hand drug sales.  This surveillance was video recorded.  Still photographs from this surveillance appear below.  In these still photographs, summarized in sum and substance, **Reanes-Moreno** (wearing a black jacket, with grey coloration near the shoulder area, and wearing black pants, and black and white Nike style shoes—similar to the shoes worn on June 27, 2023 as seen in the photographs above) can be seen exchanging what, based on my training and experience, I believe to be white powder (consistent with the appearance of fentanyl or methamphetamine) to multiple customers in exchange for cash.  Some of these still images appear below:

 



20.     On the basis of this surveillance, I have further probable cause to believe that **Reanes-Moreno** violated 18 U.S.C. § 841(a)(1), (b)(1)(C) by possessing fentanyl with the intent to distribute it on June 27, 2023.

21.     A criminal history query for the bagholder returned multiple arrests for possession of controlled substances, under the influence of a controlled substance, possession of a stolen vehicle, failure to appear, and other miscellaneous charges.  A criminal history query for **Reanes-Moreno** returned multiple arrests for possession and transportation of controlled substances spanning from 2007 to 2023, and disobeying a court order.

9

22.     Based on my training and experience, the amounts of controlled substances that **Reanes-Moreno** had on her person when arrested on June 27, 2023 were consistent with the amount possessed for distribution as opposed to mere personal use.  **Reanes-Moreno** had other indicia of sales, such as the digital scale found on her possession, which drug dealers use to measure the amount of controlled substances for retail sale, plastic bags, which are used to package retail amounts of controlled substances for sale, and a large amount of cash, which reflect the proceeds from the sale of controlled substances.  These amount of controlled substances (possessed both by **Reanes-Moreno** and by the male bag holder who appeared to be acting at her direction) on June 27, 2023, the observed hand-to-hand drug transactions made by **Reanes-Moreno** on July 19, 2023, as well as the facts and circumstances set forth above, further supports **Reanes-Moreno**'s intent to distribute the approximate 98.4 grams gross weight of fentanyl that **Reanes-Moreno** possessed at the time of her arrest on June 27, 2023.

## **CONCLUSION**

23.     Based on the information above, there is probable cause to believe that on or about June 27, 2023, **Reanes-Moreno** violated 21 U.S.C. §§ 841(a)(1), (b)(1)(C), based on her possession with intent to distribute a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide (fentanyl), specifically the approximate 98.4 grams gross weight of fentanyl that **Reanes-Moreno** possessed on her person on June 27, 2023.  Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for his arrest.


*/s/ Edmund Ian Sharp*

_____
Edmund Ian Sharp
Special Agent
Drug Enforcement Administration

10

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 28th day of July 2023.  This complaint and warrants are to be filed under seal.

_____
HONORABLE ALEX G. TSE
United States Magistrate Judge

11